1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No. 1:18-cr-00240-NONE

12              Plaintiff,                   ORDER DENYING DEFENDANT'S
                                             MOTION FOR COMPASSIONATE
13        v.                                 RELEASE

14   FRANKIE THOMAS GOULDING,                (Doc. No. 31)

15              Defendant.

16

17        Pending before the court is defendant Frankie Thomas Goulding's motion for

18   compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), which he brought on his own

19   behalf. (Doc. No. 31.) On May 22, 2020, the undersigned referred the motion to the Office of the

20   Federal Defender and, on June 2, 2020, the court appointed counsel to represent the defendant in

21   connection with this motion. (Doc. Nos. 32, 33, 36.) On July 1, 2020, counsel filed a

22   supplemental opening brief in support of the motion. (Doc. No. 42.) On July 10, 2020, the

23   government filed its opposition and July 13, 2020 counsel for defendant filed a reply. (Doc. Nos.

24   46, 49.)

25        Defendant seeks relief largely based on his medical condition and the risks posed to him

26   by the ongoing coronavirus ("COVID-19") outbreak. (Doc. Nos. 31; 42 at 6–17.) For the

27   reasons explained below, defendant's motion will be denied.

28   /////

                                              1

## BACKGROUND

In an earlier case brought against him in this district, defendant Goulding was convicted pursuant to his plea of guilty to distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and sentenced to the custody of the U.S. Bureau of Prisons for a term of 60 months.[1] When he got within six months of his anticipated release date, defendant Goulding was released to a Residential Reentry Center (RRC) in Fresno to complete his sentence, and approximately one month later was released to home confinement in 2017 to serve the remainder of his sentence. (Doc. No. 19 (Presentence Report) at 4.)  However, shortly thereafter he tested positive for drug use and was ordered to return to the RRC.  (*Id.*)  Although defendant initially reported as directed, within a few hours he absconded from the RCC, was placed on escape status and a warrant for his arrest was issued.  (*Id.*)  Shortly thereafter he was arrested on unrelated state charges in El Dorado County and eventually returned to federal custody.  (*Id.*)  He was indicted in this new case on October 25, 2018, and charged with escape from custody in violation of 18 U.S.C. § 751(a). (Doc. No. 10.)  On May 20, 2019, defendant entered a plea of guilty to that charge.  (Doc. Nos. 17.)  Under the U.S. Sentencing Guidelines, defendant Goulding's adjusted offense level in this case was determined to be 11 and his criminal history category was VI, resulting in an advisory sentencing guideline range calling for a sentence of between 27 and 33 months imprisonment. (Doc. No. 19 (Presentence Report) at 23.)  On August 22, 2019, defendant was sentenced to a mid-guideline sentence of 30 months imprisonment to run consecutively to the remaining sentence imposed on his earlier methamphetamine conviction.  (Doc. No. 25 at 2.)

Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") Sheridan Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan").  (Doc. No. 31 at 1.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of

---

[1]  *United States v. Frankie Thomas Goulding*, No. 2:09-cr-00450-KJM (E.D. Cal. Oct. 22, 2009).

conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.").  Those limited circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*, __ F. Supp. 3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)     extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

/////

---

[2]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).  If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.*  "Appeal to the General Counsel is the final administrative appeal." *Id.*  When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

1    18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

2        The applicable policy statement with respect to compassionate release in the U.S.

3    Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and

4    compelling reasons."  U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[4]; *see also*

5    *United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar.

6    31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary

7    and compelling reasons," even though that policy statement was issued before Congress passed

8    the FSA and authorized defendants to file compassionate release motions).  However, a large and

9    growing number of district courts across the country have concluded that because the Sentencing

10   Commission has not amended the Guidelines since the enactment of the FSA, courts are not

11

12   _____

13   [3]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months."  The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention.  The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP.  CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020).  However, the BOP's authority in this regard is limited to "the covered emergency period."  *Id.*  The BOP's authority expires "30 days after the date on which the national emergency declaration terminates."  *Id.* § 12003(a)(2).  After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations."  Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).  The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release.  *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

27   [4]  The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

1   limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether

2   extraordinary and compelling circumstances are presented justifying a reduction of sentence

3   under 18 U.S.C. § 3582(c).  *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL

4   2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F.

5   Supp. 3d 674, 681 (N.D. Cal. 2019).

6      In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the

7   defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See*

8   *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit

9   has not specifically addressed the question of which party bears the burden in the context of a

10   motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts

11   that have done so have agreed that the burden remains with the defendant.  *See, e.g.*, *United*

12   *States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020);

13   *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7,

14   2020).

15   **ANALYSIS**

16      As district courts have summarized, in analyzing whether a defendant is entitled to

17   compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a

18   defendant has satisfied three requirements:

19      First, as a threshold matter, the statute requires defendants to exhaust

20      administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a
       district court may grant compassionate release only if "extraordinary
       and compelling reasons warrant such a reduction" and "that such

21      reduction is consistent with applicable policy statements issued by
       the Sentencing Commission.  *Id.*  Third, the district court must also

22      consider "the factors set forth in Section 3553(a) to the extent that
       they are applicable."  *Id.*

23

24   *Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-

25   LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4;

26   *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9,

27   2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be

28   "consistent with" the sentencing factors set forth in §3553(a)).

5

1    **A.    Administrative Exhaustion**

2        The government concedes that more than 30 days have passed since the Warden received

3    defendant's administrative request for compassionate release without a response.  (Doc. No. 46 at

4    3.)  Therefore, the court concludes that defendant has exhausted his administrative remedies and

5    will turn to the merits of the pending motion.

6    **B.    Extraordinary and Compelling Reasons**

7        "Extraordinary and compelling reasons" warranting compassionate release may exist

8    based on a defendant's medical conditions, age and other related factors, family circumstances, or

9    "other reasons."  U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other

10   reasons" was included in the policy statement at a time when only BOP could bring a

11   compassionate release motion, courts have agreed that it may be relied upon by defendants

12   bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-

13   JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

14       Thus, the medical condition of a defendant may warrant compassionate release where he

15   or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life

16   trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a

17   specific time period) is not required."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive

18   examples of terminal illnesses that may warrant a compassionate release "include metastatic

19   solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced

20   dementia."  *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental

21   condition may warrant compassionate release, including when:

22       The defendant is

23       (I)   suffering from a serious physical or medical condition,

24       (II)  suffering from a serious functional or cognitive impairment, or

25       (III) experiencing deteriorating physical or mental health because of
26       the aging process,

27       that substantially diminishes the ability of the defendant to provide
         self-care within the environment of a correctional facility and from
28       which he or she is not expected to recover.

6

1    *Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not

2    be sufficient to warrant compassionate release under ordinary circumstances, some courts have

3    concluded that the risks posed by COVID-19 tips the scale in favor of release in particular

4    situations.  *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at

5    *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably

6    extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and

7    rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.

8    But taken together, they warrant reducing his sentence.").

9         Compassionate release may also be warranted based on a defendant's age and other

10   related factors.  In these situations, "extraordinary and compelling reasons" exist where a

11   "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or

12   mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of

13   his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).  In

14   determining a defendant's projected release date, courts may take into account any "good time

15   credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18

16   U.S.C. § 3624(b)(1).  *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788,

17   at *1 n.1 (N.D. Cal. Apr. 10, 2020).

18        Here, defendant Goulding argues that extraordinary and compelling reasons warranting

19   his compassionate release exist based on his medical condition.  (Doc. No. 42 at 17.)  Defendant

20   is only 41 years old.  (*See* Doc. No. 19 (Presentence Report) at 2.)  He points to his "documented

21   chronic heart condition as well as Hepatitis C" in support of his motion for compassionate

22   release.  (Doc. No. 42 at 8.)  As the supplemental brief filed by defendant's counsel notes, "[i]n

23   his pro se motion, [defendant] also cites his need for Compassionate Release based on asthma as

24   well as a damaged liver."  (*Id.*)  Aside from defendant's own statements in his opening pro se

25   motion, the court is unable to locate any documentary support for defendant's alleged asthma

26   condition and damaged liver.  (*See* Doc. No. 42-7 (email from defendant to his defense counsel

27   stating that a nurse told him his liver was at high risk but without evidentiary support).)  As for

28   his "chronic heart condition," defendant has submitted a declaration from his fiancé recalling a

1   visit to defendant at Herlong Federal Correctional Institute in 2015, where a correctional officer

2   asked her, "How is [defendant] doing after his heart attack?"  (Doc. No. 42-6 ¶ 1.)  Once again,

3   however, there is no documentation to support any claim that defendant has suffered a heart

4   attack.  However, there is evidence before the court indicating that defendant suffers from an

5   irregular heartbeat, for which he has been prescribed medication.  (Doc. No. 45 at 10, 14

6   (sealed).)

7        Defendant has suffered from Hepatitis C for some time.  (Doc. No. 19 (Presentence

8   Report) at 18.)  Defendant's most recent medical records reflect that his Hepatitis C is current, not

9   in remission or resolved.  (Doc. No. 45 at 3–4 (sealed).)  Several courts have found that Hepatitis

10  C damages the liver and weakens the immune system, which in turn may establish extraordinary

11  and compelling reasons for the purposes of compassionate release amidst the COVID-19

12  pandemic.  *See, e.g.*, *United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *6

13  (S.D. Iowa May 21, 2020); *United States v. Ludwig*, No. 2:14-cr-00043-KJM, 2020 WL 4547347,

14  at *2 (E.D. Cal. Aug. 6, 2020) (involving a defendant with history of Hepatitis B and C).  This is

15  because the U.S. Centers for Disease and Prevention ("CDC") identifies individuals with

16  weakened immune systems as "at increased risk of severe illness from COVID-19," while

17  individuals with liver disease "might be at increased risk for severe illness."  *See Coronavirus*

18  *Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR

19  DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

20  precautions/people-at-increased-risk.html (last visited Sept. 7, 2020).  Accordingly, the court

21  concludes that defendant is at higher risk of becoming severely ill were he to contract COVID-19

22  based on his documented history with Hepatitis C.[5]

23  _____

24  [5]  The government acknowledges that defendant also suffers from essential, not pulmonary, hypertension.  (Doc. Nos. 46 at 12 n.1; *see also* 46-1 (sealed).)  In addition, defendant Goulding is

25  a former smoker, though his medical records note he has "clear lungs."  (Doc. No. 45 at 9–10 (sealed).)  According to the CDC, defendant "might be at an increased risk for severe illness from

26  COVID-19" due to his hypertension.  *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION,

27  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Sept. 7, 2020) (stating those who suffer from pulmonary hypertension are in

28  fact at risk, as opposed to hypertension generally which "may" place an individual at risk).

Still, defendant must demonstrate that his serious medical condition "substantially diminishes [his] ability . . . to provide self-care" in FCI Sheridan.  U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  The decision in *Ludwig* is instructive.  In that case, the court found that a defendant who had Hepatitis B and C demonstrated extraordinary and compelling reasons because, in significant part, the conditions at BOP's Beaumont Federal Correctional Institute (Low) did not allow him to take the precautions required for his medical condition.  *Ludwig*, 2020 WL 4547347, at \*5–6. The court noted that the number of cases at Beaumont was steadily increasing and the facility did not allow for adequate physical distancing, only providing "2.5 feet" between inmates. *Id.*  Here, by contrast, FCI Sheridan[6] has only ever had four reported cases of COVID-19, in contrast to other federal prisons where cases have been reported to reach the triple digits.[7]  *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Sept. 7, 2020).  Additionally, defendant Goulding has not submitted any evidence of his inability to take proper precautions for his Hepatitis C condition while he is incarcerated at FCI Sheridan. According to the most recent, detailed medical records provided in support of the pending motion, a BOP physician listed defendant's condition as "good."  (Doc. No. 45 at 10 (sealed).) As the undersigned has noted, "[c]hronic conditions that can be managed in prison are not a sufficient basis for compassionate release."  *United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at \*3 (E.D. Cal. Feb. 12, 2020).

Based on the evidence presented in this case, the court cannot conclude that defendant is significantly hindered in providing self-care with respect to his medical conditions while he is incarcerated at FCI Sheridan.  Therefore, the pending motion fails to demonstrate extraordinary

/////

---

[6]  FCI Sheridan, and the adjacent detention center, collectively house 1,107 inmates.  *FCI Sheridan*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/she/ (last visited Sept. 7, 2020).

[7]  The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. However, there is also no evidence before the court contradicting those reported numbers.

and compelling reasons justifying defendant's compassionate release. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).

**C.      Consistency With the § 3553(a) Factors**

Because the pending motion and supplemental opening brief fail to establish extraordinary and compelling reasons justifying compassionate release in this case, the court need not address whether any reduction in defendant's sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).

## CONCLUSION

For the reasons explained above, defendant's motion for compassionate release (Doc. No. 31) is denied.

IT IS SO ORDERED.

Dated:   **September 9, 2020**                              _____
                                                                          UNITED STATES DISTRICT JUDGE