UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FRANKIE THOMAS GOULDING,<br><br>Defendant. | No. 1:18-cr-00240-LJO<br><br>ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF COMPASSIONATE RELEASE DENIAL<br><br>(Doc. No. 51) |

On May 15, 2020, defendant Frankie Thomas Goulding filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), and on July 1, 2020, appointed counsel for defendant filed a supplemental opening brief in support of that motion. (Doc. Nos. 31, 42.) On July 10, 2020, the government filed its opposition to the motion, and on July 13, 2020, defendant filed his reply. (Doc. Nos. 46, 49.) On September 10, 2020, the court denied defendant's motion for compassionate release by written order. (Doc. No. 50.) On October 14, 2020, defendant filed a *pro se* motion for reconsideration of that order denying relief. (Doc. No. 51.) For the reasons discussed below, the motion for reconsideration will be denied.

"Although not expressly authorized by the Federal Rules of Criminal Procedure, motions for reconsideration are allowed in criminal cases." *United States v. Jones*, 916 F. Supp. 2d 83, 86 (D.D.C. 2013). The Local Rules provide that motions for reconsideration in criminal cases must

demonstrate "what new or different facts or circumstances are claimed to exist that did not exist or were not shown upon such prior motion or what other grounds exist for the motion." E.D. Cal. R. 430.1(i).

Defendant argues that his motion for reconsideration should be granted because in issuing its order denying relief this court made a manifest error of law and/or fact. (Doc. No. 51 at 7.) Defendant's motion states that the "sole reason" for the court's denial of his compassionate release motion was based upon the fact that defendant did not carry his burden in demonstrating that he "is significantly hindered in providing self-care with respect to his medical conditions while he is incarcerated" in the custody of the Bureau of Prisons ("BOP") at its Sheridan Federal Correctional Institute ("FCI Sheridan"). (*Id.*) (quoting Doc. No. 50 at 9–10.) In defendant's view, the court's conclusion was incorrect because his declaration, attached to the reconsideration motion, "shows facts to the absolute and total contrary." (Doc. No. 51 at 8.) Defendant did not submit a declaration in support of his compassionate release motion because, he asserts, his appointed counsel "never asked [him] to complete" one. (*Id.* at 22.) Thus, defendant concedes that the court's order denying his release was "correct" because its conclusion was "[b]ased on the evidence presented . . . ." (*Id.* at 14.) In the declaration he has now submitted defendant explains that he is unable to socially distance because he is housed in a unit with quarantined inmates and highlights tension among inmates which prevents the proper sanitation of common areas such as showers, tables, computers, and telephones. (*Id.* at 24–28.) Defendant has also attached to his declaration written confirmation from the BOP that he was approved for a cardiology appointment, although no other details are provided by defendant in that regard. (*Id.* at 28.)

Defendant's motion for reconsideration does not change the court's conclusion that he has failed to show "extraordinary and compelling reasons" warranting his compassionate release. In denying defendant's release, the court concluded that he did not carry his burden in demonstrating that he was significantly hindered in providing self-care at FCI Sheridan. (Doc. No. 50 at 9.) That conclusion was partly based on the fact that defendant appears to be in good health while in FCI Sheridan and he does not appear to be suffering from any pain or other hardship. These

conclusions are supported by the BOP medical records stating that defendant was in "good" condition. (*Id.*) When the court denied defendant's release, aside from evidence indicating that defendant suffered from an irregular heartbeat, there was no medical evidence before the court suggesting that defendant suffered from a serious heart disease. (Doc. No. 50 at 9–10.) Absent any additional information, the fact that defendant was recently approved by the BOP for a cardiology appointment does not change the fact that he generally appears to be in good health in prison. (*See* Doc. No. 51 at 28.) But even if the court were to infer that, in addition to defendant's Hepatitis C, he is also at risk of suffering severe illness were he to contract COVID-19 due to a serious heart condition, defendant would still be required to demonstrate that his medical conditions "substantially diminish [his] ability . . . to provide self-care" in FCI Sheridan. U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Merely presenting evidence of having obtained BOP approval for a medical appointment clearly does not meet that standard.

      Defendant Goulding now focuses on his alleged inability to socially distance inside FCI Sheridan. (*See generally* Doc. No. 51.) The risk of contracting COVID-19 still does not tip the scales in favor of defendant. FCI Sheridan appears to generally be managing the virus outbreak well. As of the date of the order denying defendant's motion for compassionate release, FCI Sheridan had only reported four COVID-19 cases. (Doc. No. 50 at 9.) That prison now reports that five inmates have contracted COVID-19, all of whom have recovered. *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Oct. 18, 2020). FCI Sheridan has not reported any deaths. *Id.* Currently, there are zero reported active cases of COVID-19 at FCI Sheridan.[1] *Id.* Thus, even if the court were to accept at face value defendant's declaration describing his inability to socially distance at that prison, it does not change the court's conclusion. For these reasons, defendant has not demonstrated that "extraordinary and compelling reasons" justify his compassionate release. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).

      Finally, the order denying defendant's motion for compassionate release did not address whether a sentence reduction in this case would be consistent with consideration of the sentencing

---

[1] As stated previously, the undersigned does not necessarily accept these reported numbers at face value, however, there is no evidence before the court contradicting them.

factors set forth at 18 U.S.C. § 3553(a).[2]  Even if the court concluded that defendant had established that his ability to provide self-care in FCI Sheridan was substantially diminished—which it does not—the court would still need to ensure that any sentence reduction would be consistent with § 3553(a).  As the court summarized briefly in the order denying compassionate release, defendant has demonstrated his inability to comply with court-imposed conditions.  (*See* Doc. No. 50 at 2.)  Defendant Goulding was sentenced to a term of imprisonment of 60 months for distribution of methamphetamine, but he was released several months early to a residential reentry center (RRC) and then eventually to home confinement.  (*Id.*)  Defendant later engaged in the prohibited use of drugs and was ordered to return to the RRC.  (*Id.*)  Shortly after returning to the RRC, defendant absconded and was charged with escaping from federal custody and was subsequently sentenced in August 2019 to a 30–month term of imprisonment.  (*Id.*)  Because defendant's 30-month prison sentence for the escape was imposed consecutively to the remainder of his original 60-month sentence for methamphetamine distribution, to date defendant has served about 60 months of his aggregate 90-month sentence, or about 67% of the total sentence imposed.  (Doc. Nos. 25 at 2; *see* 46-1.)  A sentence reduction of approximately 30 months—which is what defendant seeks through his compassionate release motion—would effectively negate the entire sentence that was imposed upon defendant for his escape from federal custody.  In the undersigned's view, a 60-month sentence (and a 30-month sentence reduction) would not adequately reflect the seriousness of defendant's offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct.  *See* § 3553(a);

---

[2]  Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

*see also United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *5–6 (N.D. Cal. May 26, 2020) ("The length of the sentence remaining is an additional factor to consider in any compassionate release analysis, with a longer remaining sentence weighing against granting any such motion." (citation omitted)).

      For the reasons explained above, defendant Goulding's motion for reconsideration of the order denying his compassionate release (Doc. No. 51) is denied.

IT IS SO ORDERED.

Dated: **October 19, 2020**

_Dale A. Drozd_
UNITED STATES DISTRICT JUDGE